28, Think Products, Inc. v. ACCO Brands Corporation. Mr. Schindler. Thank you, Your Honor. May it please the Court, I am Edwin Schindler and I represent the plaintiff appellant Think Products in this case. This is an appeal taken from a grant of summary judgment in favor of the appellee's ACCO Brands, in which the District Court for the Northern District of Illinois granted ACCO Brands summary judgment on their collateral estoppel defense. There is no other basis for summary judgment in this case. The criteria to be applied for determining the applicability of collateral estoppel are those of the regional circuit in which the District Court sits. In this case, the Seventh Circuit's criteria of collateral estoppel are to be applied, which all parties agree, as well as the District Court, that Seventh Circuit law is the applicable law for determining collateral estoppel. Seventh Circuit law and the crime that the parties dispute is the Seventh Circuit law requires that the issue be concluded in a subsequent litigation as collateral estoppel must have been essential to the final judgment. As en bas panels of the Seventh Circuit held both in Peabody v. Speece in 1997 and more recently in Biome v. Holy Land Foundation in 2008, the Seventh Circuit has, and as this Court also recognized more recently in 2017 in Phil Inselcorp v. Airlight Plastics, the Seventh Circuit declines to give independently sufficient alternative holdings for supporting a prior judgment conclusive effect. In effect, the Seventh Circuit law on the third prong of the collateral estoppel criteria that holdings in the alternative, either of which would independently be sufficient to support a conclusive effect in subsequent litigation with respect to either issue standing alone and therefore not essential to the prior judgment and collateral estoppel is to not to be applied to either of the two independent grounds or multiple independent grounds for supporting the prior judgment. As applicable to this appeal, the parties dispute whether or not an obvious determination in the prior litigation was essential to the prior judgment and more whether the prior opinion of this Court in February 2018 affirmed or otherwise decided by necessary implication a secondary issue as to whether or not whether the court decided by necessary implication whether the PTAF determination that in fact prior patent claims were invalidated as being anticipated by the so-called click-safe video. In this case, there was of course no question the prior determination, there's no question that in fact the obvious determination was explicitly upheld. In that prior case from 2018, this court held that the obvious determination of the board was afforded by substantial evidence because the two prior references McDade and Chen tore it away from one another. There was never any question that McDade and Chen were prior art against the product's prior patent claims. Of course, the effect of filing date, excuse me, the prior art data, each of those two prior references was well before the effect of filing date. Counselor, this is Judge Reynolds. Going to the first issue that you addressed, and this is dealing with material differences between the invalidated claims and the asserted claims of the patent. When I look at that and I look at the newly issued claims, I see a different language. But the disclosure, the invention, it seems to me to be the same invention. I mean, there could be one limitation. But tell me why that viewpoint that I have may be incorrect. Okay. Well, first of all, that concerns a different prime than the essential prime. But addressing your question, the current set of claims, actually the locking member is based upon the element of 286 in the federal of figures 28C and D, whereas in the prior litigation, the cap security right claim element was based upon the element number 291, which is a figure 30. It's two different elements. Furthermore, in the current case, the locking member has to have a locking end, while in the prior case, it was determined that, in fact, the cap security right did not have a locking end. We had argued, many things prior to that argued, that, in fact, there was support for cap security right, and that it did have a locking end. After brands, the defendants and the appellees argued the fact that there was no written description support for the cap security right to have a locking end, and the claims were, therefore, invalidated, or to be more precise, the claims were found to not have written description. And that's because you believe that the newly issued claims are broader. They're broader than the narrower claims that are found to be obvious. No, that's not our position. Our position is that locking member of the current claims and cap security right of the prior claims are, in fact, exclusive of one another, because locking member has to have a locking end, whereas the cap security right, as construed in the prior litigation, did not have a locking end. The case by Apple brands essentially presupposes that the claims, that the cap security right claim term of the prior case was somehow valid and did have a locking end. It presupposes that, in fact, there was written description support when in fact it wasn't. We believe that the claims, at least in terms of locking them, do not overlap. As we pointed out in our response to what we said, a hypothetical dependent claim, for example, that said, where the locking member is a cap security right, would be invalid, because the cap security right cannot be a locking member, because the cap security right does not have a locking end, whereas the locking member must have a locking end. But we also believe that that issue goes to the question of whether or not the same issue is being litigated or relitigated. We believe that that issue is separate from the essential prong, meaning that concerns the participation issue, whereas the obvious issue in the prior litigation was entirely separate. Whether or not the cap security right claim term of the prior issue had subject matter support or written description support, and it was found to have written description support, determined the effective filing date of the prior set of claims. Once we lost that issue and there was no written description support for cap security right, the effective filing date of the prior claims was February 2011. That allowed the click-safe video publication to be sizable against those claims as prior art, which had an October 2010 publication date. Our argument, had it succeeded and had there been written description support, would have relied upon a disclosure that hadn't. Counselor, does the claim in the previously invalidated claim, doesn't it disclose a locking end? The claim, well, the answer is that it was held not to disclose a locking end, or the construction of cap security right meant that there was no locking end. The claims would help to be invalid, because while the language of the claim may literally have said locking end, it was in fact not supported by the description of the claims, and therefore there was no locking end. In other words, that argument would presuppose that the claims were valid. We say they weren't valid, we lost that issue, and the cap security right did not have a locking end. We also believe that that issue solely goes to the question of anticipation and not obviousness, which was entirely separate. And there being two independent issues decided, neither one of the criteria of collateral estoppel established by the Seventh Circuit means that neither issue is essential. Now to the extent that it might be an issue that could be overlapping in the two litigations, where collateral, where all four criteria of met, particularly the issue concerning the essentiality of the prior, whether a particular issue was essential to the prior judgment, where that issue is not met, then the four prior to collateral estoppel are not met, and collateral estoppel should not be applied. The result would be that, yes, it could be an issue that could be re-litigated. As we discussed in our reply brief, this is very similar to the Texas versus IBM case, where in fact that Federal Circuit applied Fourth Circuit law in that case. In that case, the Fourth Circuit applies the same rule as to essentiality that the Seventh Circuit applies. It was determined that in the prior litigation, there were two issues that supported the prior judgment. And in fact, the Federal Circuit held in Texas versus IBM that neither issue was to be accorded collateral estoppel, even though in that case, the plaintiff was allowed to re-litigate the claim construction term. And even though the plaintiff in that case did not have any additional evidence, in our case, there is additional evidence to support the patentability of the new set of claims. We believe the claims are not the same, but even if they were the same, we believe that there is no issue in the prior judgment that was quote-unquote essential to support the notion or the application of collateral estoppel. And before I reserve the rest of my time for rebuttal, I would like to also say that on June 23rd, we filed a letter under Federal Rule of Appellate Proceeds 28J, addressing the Supreme Court's case in Anthrax versus U.S. from June 21st. The reason the that the prior judgment was not constitutionally issued and may not be available for collateral estoppel purposes. That hasn't been briefed, but if the court would want, would suggest it, we would be willing, if appropriate, to have supplemental briefing on that issue. I wish to reserve the rest of my time. Okay. Anything to ask Mr. Schindler at this time? Okay. Then we'll hear from the other side. Mr. Weiner. Thank you, Your Honor, and may it please the court. The district court correctly granted summary judgment of invalidity applying collateral estoppel based on this court's 2018 judgment and a prior appeal of two IPR decisions. The district court correctly determined that the obvious misdetermination over the McDade and Chen references was essential to the court's 2018 judgment was based solely on obviousness. There is no reasonable basis for Think Product's argument that anticipation was an alternative ground relied on by the federal circuit in 2018. Although the board addressed both anticipation and obviousness in the appeal, the federal circuit did not address anticipation, stating at pages 1032 to 33 of the opinion, for the reasons below, we agree with the board's claim construction and affirm its obviousness determination, end quote. In footnote one, immediately following the statement, the court explained why it did not address anticipation, stating, because we affirm the board's determination of obviousness, which renders unpatentable all of the challenge claims, we need not reach the board's determination of anticipation, which constitutes an alternate ground of unpatentability, end quote. The court's language in 2018 could not have been more clear. The court did not address anticipation. The district court also correctly determined that the claims at issue on appeal are not materially different from the claims invalidated in 2018. Think Product's admitted that the same combination of prior art, McDade and Chen, discloses all elements of the claims at issue on appeal, and that admission is found at appendix page 2878. For that reason, any differences in claim language are not material. Applying the standard of Ohio will or would, the difference in claim language does not materially alter the question of invalidity. In determining that the claims were not materially different, the district court compared the claim language of the claims invalidated in 2018 compared to the claims at issue on appeal, noting that the 758 patent addressed in 2018 recites a captive security rod having a locking end and an anchoring end, but the 375 patent at issue in the present case recites a locking member having a locking end. The district court correctly determined that this difference is not material. The term locking member having a locking end does not require an anchoring end, and is therefore more broad than the captive security rod term, which does require an anchoring end. So the prior art that discloses a captive security rod having a locking end and an anchoring end necessarily discloses a locking member having a locking end. For that additional reason, the difference in claim language does not materially alter the question of invalidity. Think Products argues that the claims have no overlapping scope. As we pointed out in the red brief, this argument makes no sense. Think Products knows that the claims overlap in scope. They accuse the same ACO product line of infringing both sets of claims. In its reply brief and in the argument today, Think Products fails to explain how claims with no overlapping scope can cover the same product. And instead, in the reply brief, they argued that this issue, which was addressed in 10 pages of argument in its opening brief, is irrelevant. Because obviousness was essential to the court's 2018 judgment, and the claims at issue in the present case are not materially different from the claims at issue in that case, the district court correctly applied collateral estoppel in this case. No other elements of collateral estoppel were disputed by Think Products, and for these reasons, the decision should be affirmed. I'd like to briefly address the Seventh Circuit law issue argued by Think Products. As we argued in the brief, there's no need for this court to weigh in on this issue of Seventh Circuit law, this alleged ambiguity in Seventh Circuit law that Mr. Schindler argued in the brief. Today, he didn't point out, but their argument is based on the argument that the Seventh Circuit overruled two prior presidential decisions, the Shillong case from 1986 and the Magnus Electronics case from 1987. Think Products argues that these cases were both implicitly overruled or overruled sub salento by the Seventh Circuit in 1997 in the Peabody Call case. That's an incorrect reading of Peabody Call. But as long as the Federal Circuit agrees with ACCO's position that there is no issue raised of alternative determinations of invalidity in 2018, then there's no need for the court in this case to weigh in on this issue of Seventh Circuit law. There is no disagreement that based on Seventh Circuit law, based on Federal Circuit law, as long as the Federal Circuit agrees that there was only one issue addressed in 2018, and that is obviousness, then collateral estoppel is appropriate to apply in this situation. Mr. Weiner, do you want to weigh in on the Arthrex response, or do you want to leave that for us to figure out? I would like to briefly respond, and thank you, Your Honor. In ACCO's view, the Arthrex decision by the Supreme Court has no effect on this case at all. The 2018 judgment is not going to be reopened. I don't think Products has argued that it should be opened or could be reopened. It's not going to be. It's still out there as a final decision issued by this court. The mandate was issued in 2018, and there's no basis for changing that decision, and that decision is out there and available for its collateral estoppel effect as well. Even if theoretically Arthrex could have affected that case, I think Products waived its argument on that issue but not raising it in the briefing in this case. The Supreme Court did decide Arthrex recently, just last month. However, the Federal Circuit's Arthrex decision in 2019 already decided that APJs exercise the authority of principal officers but were not appointed as required under the Constitution. I think Products didn't cite Arthrex in its opening brief or reply brief. It didn't mention Arthrex, so that issue was waived and should not be considered by this court, and to request further briefing from the parties would be a total waste of time, of the court's time, and of the party's time. Any more questions for Mr. Weiner? Hearing none, Mr. Schindler, you have your rebuttal time. Okay. I like the central issue here seems to be whether one issue or two issues were decided in the prior litigation. There's no dispute between the parties that there were two issues decided by the PTAB, and there were two issues argued before this court and briefed before this court back in 2017-2018. For some reason, which we're not clear about, let me rephrase that. It's unquestionably the case that this court decided in its prior judgment that the capital security right claim term was there. This court, excuse me, the PTAB's destruction of the capital security right claim term was affirmed by this court. There seems to be no dispute about that. The parties also agreed in the prior litigation that that was determinative of both the filing date and of anticipation, and that there's never been an explanation by Afrobranch how it was possible for the federal circuit to affirm capital security and claim to structure the PTAB, yet not also by inherent, by inherency or by necessary implication affirmed the anticipation ruling. Back in the original appeal back in 2016-2017, the parties agreed and think parties agreed that a comparison of the prior claims versus the video was unnecessary if, in fact, the prior claims are not entitled to the February 2011 filing date. And that issue was decided for that basis that the anticipation was inherently included. Furthermore, Afrobranch has never explained what happened to the anticipation issue that was decided by the PTAB. It was never vacated and it was never reversed. The court allowed it to stand. Now, we believe that that footnote loan was probably ambiguous. Part of it talks about the fact that anticipation was not determined. We understand that as simply saying that the court did not make the comparison between the claims and the click-safe publication, but it also goes on to say that the alternative grounds for accountability. It's our position that the totality of the decision must be considered. And the prior decision of the federal circuit held that cap and security rod claims destruction of the PTAB was affirmed, and that according to the court and the prior litigation, we find the board's construction to be legally proper and supported by substantial evidence. With that statement in the prior judgment, there was no way, and Afro has never explained how is it possible that with that claim construction and with the click-safe video being cited with prior art, how it was possible for the prior judgment to not have inherently or by necessary implication beside the anticipation issue. If there were two issues, then they were both independently determinative of the prior result. If the, the obvious issue of McVade and Chen did not require an effective filing date, that thing passed the possibly claim. In other words, it was understood prior art, whereas the anticipation issue was, was affected inclusively by whether or not things passed at the February, 2011 effective finding or the May, 2008 effective filing date. And therefore, if one issue had dropped out, if obviousness had dropped out of the case, anticipation would still have been, would still have been the basis for invalidity. And the Afro branch also seems to focus on whether or not the claims were materially the same or not materially the same, but that's a separate prong from the essential component of the seven circuit test. We believe the claims are not the same, but even if we want to say that they were the same or at least close, they can't be exactly the same, but let's say they were close. Still the essentiality component is not met because there were two independent grounds for the prior judgment, anticipation and obviousness of either one without the other would have resulted in the same result. So are you, are you arguing that the federal circuit decided anticipation by implication? Yes. And what's, the court said very explicitly in a statement that it did not reach the issue. So what's your support that the federal circuit did decide the issue by implication? Well, the prior decision had three pages, a detailed discussion of the cap security right claim term, which was entirely independent and unrequired for the obvious determination. In fact, even Afro branch in their appeal brief stated that the claim construction of the cap security right and the court's affirmance was simply dictum. And what we don't believe was dictum, but whatever it was, it was a clear unambiguous affirmance of the cap security right claim term and the construction recorded by the board. That construction established the effective filing date of the prior set of claims and that established the click state video was prior art and that established the anticipation analysis. Our interpretation of the first footnote is simply that the court, the federal circuit did not proceed to go through the, did not compare the limitations of the prior set of claims against the click state video to affirm, to confirm or complete the anticipation analysis. But, but the federal circuit did, did affirm unambiguously. Both parties agree that the construction of the cap security right, and that was, that was a conclusive, that was the antecedent of the anticipation holding of invalidity. Are there any further questions? Okay. Anything else for Mr. Schindler? Okay. Our thanks to both counsel. The case is taken under submission.